Welcome back. Our fourth case is 20-2126 United States v. Martinez, and for the appellant is Mr. Elsenheimer. You may proceed when you're ready. Thank you, Your Honor. Good morning, or may it please the Court, Counsel. My name is Eric Elsenheimer. I represent the appellant, Mr. Eric Martinez. Mr. Martinez, I would like to begin my argument with our second argument regarding the dangerous weapon enhancement. Mr. Martinez should not have received a two-level enhancement for possession of a dangerous weapon, and in applying that enhancement, the District Court erred in its interpretation of the term dangerous weapon in the burglary guidelines by failing to engage in a case-specific factual inquiry about the use or attended use of the specific item at issue, in this case a hammer. The statute talks in terms of possession, not use, so why do we look at use when the issue is whether you possess a dangerous weapon? Certainly, Your Honor. You're absolutely correct that the guidelines talk of possession, but the term possession and the context and the function of the particular item at issue in the particular case, and I say that for a couple of reasons, and I'll get to those in just a moment, but first just briefly to answer Your Honor's question. Context is important for this analysis because virtually under the case law, virtually anything can qualify as a dangerous weapon, and so applying the term dangerous weapon when an item is used in or possessed in the course of a burglary runs the risk of essentially expanding that particular enhancement in the burglary guidelines to virtually every each and every burglary, so it's essentially taking those two levels and adding them to the base offense level. So I don't think it's just looking at the term possession, but we have to look at the term dangerous weapon and how that term is defined in 1P1.1. He took the hammer into the building, correct? He didn't find the hammer on the front porch or in the front room, did he? He used it as a part of the committing the crime. Your Honor, I had a difficult time hearing your question. I think you asked if he used the hammer or entered the house with the hammer. Is that right? Absolutely. He did enter the house with the hammer. He used the hammer to break into the house. It was a burglary tool, and just to go through that really quickly because I think it's important in understanding the fact-specific inquiry here, Mr. Martinez used the hammer to break into the house. Very shortly after entering the house, he placed the hammer on a table in the center of the living room. We know that because the surveillance cameras watched the entire thing. We have all of that surveillance footage. He placed the hammer on the table. Before doing so, and I also think this is important, he didn't carry the hammer by the handle. He carried it by the head nonchalantly as he walked into the house and placed it down on the table. And that hammer remained there for the remainder of his time and his co-defendants time in the house. And it wasn't until immediately after, I'm sorry, before they left the house that one of his co-defendants picked the hammer back up off the table and they left the house. Well, don't we have to look at the definition, for instance, in 2B 2.1, an instrument capable of inflicting death or serious bodily injury? And I haven't gone short to do that, can it? If I hit you in the head with a hammer, would it be I disagree with your honor about that. But the key language in 1B1's definition of a dangerous weapon is the word capable. I, that term capable requires a context driven analysis. And I say that for this reason. Certainly that guideline appears to be very broad. And the reason that that term capable requires a context driven analysis, the fact driven analysis is because if we look at another section of the guideline, the aggravated assault guidelines, the term dangerous weapon is defined slightly differently. The aggravated assault guidelines, and that is, they define the term dangerous weapon as that term is defined in 1B1.1 and including any instrument that is not ordinarily used as a weapon, a car, chair, or ice pick. If such an instrument is intended to commit bodily injury. So we have 1B1.1's definition of dangerous weapon. And the same term defined in the aggravated assault guidelines expands that definition. As a rule of statutory construction in interpreting the guidelines, the fact that that term is defined slightly differently and expanded in the aggravated assault guidelines suggests, I think quite clearly indicates that the term used in 1B1.1, which is then used in the burglary guidelines, is more narrow. And that's why I say, Judge Kelly, that the term capable there requires a fact-specific inquiry about the specific use or possession of that item in the context of a burglary. And the reason I say that is, you know, if you had a ladder, that would not fit into that definition. Unless you're gonna pick up a ladder and hit somebody in the head with it. He might have used a ladder to go in the window. Just to address that question, Your Honor, my understanding of the case law, and the case law is we have quite a wide universe of cases discussing the term dangerous weapon. And there is an almost infinite universe of items that have been found to qualify as dangerous weapons when used as a weapon. So for example, we have cases discussing tennis shoes as weapons. We have cases discussing shoelaces as weapons. There's a case that discusses one's teeth being used as a weapon. So if the universe is an almost infinite universe of items that could qualify as dangerous weapons, then if we're just looking at the mere possession without a secondary analysis of the context, then we run the risk of essentially having somebody who uses a tool to enter a house, which is almost every burglary. So for example, Your Honor, somebody enters a house with a screwdriver. Because they're in possession of that screwdriver, and that screwdriver could be a dangerous weapon, they automatically get the enhancement without a secondary analysis of how that particular item was used. The defense doesn't dispute that the hammer is capable of causing death or serious injury argues he didn't use it. And that really is not the test. He didn't use it or have the intent to use it. He didn't possess it with the intent to use it as a as a dangerous weapon. He possessed as a burglary tool, just as any most individuals breaking into a house use something to break into the house. So using a hammer to smash or I'm sorry, a ladder to smash it in a window, because a ladder could in the right circumstances be used as a dangerous weapon that would trigger the enhancement. And the consequence of that is this, by applying this particular term to any item, any everyday ordinary everyday item, a hammer, a screwdriver, a set of keys, when they're using in a burglary or possessed as part of a burglary, deprives the guidelines of the function that they serve of distinguishing between and among offenders. The guidelines serve the function of distinguishing one offender from another offender. And that's why we have specific offense characteristics. And we require factual inquiry to support a specific offense characteristic. But if the term dangerous weapon in the burglary guideline applies to any tool that's used to effectuate entry into a house, or possessed, when somebody is walking through a house, then we deprive the guideline that particular guideline of its function of distinguishing among different categories of offenders. Let me interrupt, it seems to me that that that the purpose of the guideline is, if you have a burglary, the hope is that you're not going to run into anybody. And you just go in and steal things. But if you have a hammer in your hand, and you're startled by the owners returning home, there's a real risk. And it's very easy to use a hammer as a weapon, a tennis shoe, not so much. So I mean, may I don't I don't, you make some arguments here. But in looking at the statute and looking at the purpose, and looking at the language possessed, it perfect sense to me to punish differently based on whether you possess a hammer that could easily kill someone if used against them. Your Honor, I understand your question, I want to address because I think that gets to the problem that there's no in finding that a hammer is an appropriate basis for this particular offense, this particular specific offense characteristic, the two level bump, there's no analytical distinction between a hammer and a tennis shoe, there's no way or a steel toed boot or a set of keys that somebody has in their pocket, because those keys could, in some eventuality be used as a weapon. What I think this court's case law proposes, and this is this Tisnotho's case, that we look to the use of a particular item in of causing serious bodily injury or death, we look to its functional use in a particular case. And that's why I have a record question on that, because it seems if we agree with you and go to the secondary analysis, which I cannot hear you, I don't know what's wrong with your sound. Can the council hear me? You can, Your Honor, I was having a difficult time earlier, but Judge McHugh, can you hear? You're better now. I was having trouble when you were sitting farther back. All right, I'll put my headset on in a minute. Okay, my question was a record question. Judge Kelly, is that better? Yes. My question was a record question. Facially, it looks like a hammer was capable of being a dangerous weapon, obviously. Was there testimony before the court where your client disclaimed any intent to use it? Is there anything that would suggest, other than the visuals, that there was no intent to use it if he were surprised by a homeowner? No, Your Honor, there was no testimony on that point. But again, I think the facts in this case are so clear that the hammer was used to get into the house and then immediately, or virtually immediately, placed on a table. And I also think it's significant that he walked with the hammer, holding the head of the hammer, not by the handle. I'm not suggesting that there's situations where somebody enters a house, an unoccupied house, with a hammer. For example, if they have the hammer over their shoulder, walking around not knowing if somebody's there, then certainly there's evidence there to suggest they're using the hammer in a way that is as a weapon. But that didn't happen here. And the district court erred in interpreting the guidelines in a generic fashion, where the possession of something that could cause death or great bodily harm in a burglary automatically qualifies for that dangerous weapon enhancement, essentially makes that enhancement part of the base offense level, and deprives it of its ability to distinguish among offenders in the context of a burglary. Your Honors, I have two minutes left. I'd like to reserve the rest of the time. Could I shift gears for a minute? If you could just clearly and succinctly, as you can, summarize what your reasoning is on the assimilation question. Why you think the federal scheme would permit the assimilation of the conditional discharge here. And I'll give you some rebuttal time. Thank you, Your Honor. I'll be very brief in the assimilation. First of all, the language of the Indian Major Crimes Act clearly contemplates that crimes be defined and punished in accordance with state law. Secondly, there's nothing about, and this is in response to the government's argument, there's nothing about federal law or policy that, there's nothing about a conditional discharge or a New Mexico State sentencing scheme that is contrary to federal law and policy. In fact, in 18 I pointed out, because I think it's an analogous sentencing provision under the federal code, it's 18 U.S.C. 3607, it's a sentencing procedure for first-time drug possession. And that sentencing procedure contemplates the imposition of probation prior to the imposition of a judgment. And that's virtually identical as an analog to the conditional discharge sentencing scheme in New Mexico. Does the court have the ability to do that in a non-drug case? Does it have the ability to use that provision? I don't think that there's anything about federal law or policy that says that the court does not have the ability to do that. I think that that's something that the federal court certainly can do, has the capacity of doing. The Ninth Circuit has recognized that both Oregon's and Hawaii's sentencing schemes, they're kind of deferred sentencing schemes, but they're virtually identical to the New Mexico conditional discharge. That the federal courts there can accommodate that. The fact that the federal court in drug possession cases, 3607, can do that indicates that the federal courts have that capacity of imposing probation and withholding a judgment or withholding adjudication of guilt while the person is on probation. There's nothing that the government has identified or that I can think of that makes federal sentencing scheme contrary to imposing a conditional discharge or a deferred sentence. I'm out of time, Your Honor. Thank you, counsel. I'll give you a little bit of rebuttal. Mr. Cowan. Thank you. Thank you, Your Honor. May it please the court, counsel. My name is David Cowan and I'm an assistant United States attorney for the District of New Mexico and I'm appearing on behalf of the United States, the appellee in this matter. To go in the order that counsel did, the district court appropriately applied a two-level enhancement in this case because Mr. Martinez possessed the dangerous weapon, which was a hammer. It's an instrument. What is, I mean, there is a concern that we have defined dangerous weapon so broadly, you know, tennis shoes, your teeth, you know, regular shoes, whatever. Can you suggest any way that we narrow the possession of a dangerous weapon for purposes of this guideline so that we would eliminate an absurd application? Absolutely, Your Honor, and I think the district court in this case properly weighed that consideration by saying context matters. A hammer is used for its precise purpose. It's a blunt instrument designed to hit items hard, whether a nail, a person, or in this case, a door. A hammer is unlike a pair of shoes, shoelaces, or teeth, which are normally harmless items that become dangerous only when used in an unusual or unique way. And so we don't have a statutory per se list of dangerous weapons in the federal system, unlike some jurisdictions. But absolutely, context does matter. And in this case, the district court found that there is no question a hammer is capable of inflicting death or serious bodily injury. The fact that Mr. Martinez had no occasion to use the hammer in this case as a weapon because the homeowners were not present when he broke in is not dispositive. And so that's really, Your Honor, in isolation is clearly inherently dangerous and capable. And so to follow up on Your Honor's question, there could be a first approach that says, is something readily inherently capable of inflicting death or serious bodily harm? In this case, a hammer would answer that question and we need to go no further beyond whether it was possessed. If the court is not satisfied with that first prong, I think then we could get into an expanded view of context about, for instance, shoes or shoelaces or teeth. You know, a pair of shoelaces are meant to hold shoes on your feet. But if you take those shoelaces off and tie it around someone's throat and cut off circulation in their head during a robbery, then that could be considered a dangerous weapon in the broad reading that this court or this circuit has found dangerous weapons to be. So I believe the district court should be affirmed on finding that a dangerous weapon was possessed based on the plain reading of 2B.2.1.B.4 and Section 1B.1.1's definition, along with the findings in this case on how Mr. Martinez actually did use this item. So I think either way, whether under Mr. Martinez's requested view of the expanded definition, which we believe assault is definitely separate from burglary, the district court made the to this case regarding a conditional discharge. A conditional discharge in the state of New Mexico is a systematic sentencing scheme designed to operate within all provisions of New Mexico state law. It is not a standalone provision, like probation or parole or imprisonment, that can be transferred to federal court in the case of probation or imprisonment or readily replaced with supervised release in the case of parole. There are several sources of conflict in this case. After the 1990 amendment to the Sentencing Reform Act of 1984, Section 18 USC 3551, authorized sentences, specifically restricts, unless otherwise specifically provided, assimilation from state law under the Assimilating Crimes Act and Indian Major Crimes Act to the penalties provided in Chapter 227. Probation, prison, or fine, and then there's some discretionary components as well that follow. This isn't form over substance, as Mr. Martinez claimed as reply brief. It's a matter of statutory construction and it's a plain reading example. 18 USC 3607 was included in our briefing and that's under Chapter 229, not 227, and Congress did contemplate a narrow, similar but not identical situation to New Mexico's conditional discharge for drug possessors. There, if you qualify for the special probation as it's determined, it's a prejudgment option for a narrow class of offenders. So because Congress did contemplate under Chapter 229 a very narrow class and but opted not to expand that to any other class of offender, that speaks volumes that the conditional discharge is not found and therefore conflicts. Why couldn't the court use that under the facts of this of this case? You know, Congress also told us in the Indian Crimes Act to assimilate relevant sentencing law. So, you know, the policy cuts both ways. Absolutely, Your Honor, and at first glance this could be considered a problem for the government, but we actually think it advances our opinion because a conditional discharge is different than how Section 3607 operates. Under a conditional discharge, you plead guilty or you're convicted by a jury and that is withheld while imposing judgment. This is the cornerstone of how this takes place. In the 3607 section, my understanding is that it's a form of prejudgment probation that if you don't get into trouble, the case is dismissed. Here, there is no, under a conditional discharge, you're adjudicated guilty and as contemplated by Rule 11 after the plea, you move forward and there is no statutory authorization to reopen the criminal case for the purposes of the dismissal. So, they're not identical situations and beyond how a conditional discharge commences or ultimately might end, there are key features of conditional discharge and how it in the federal system. And so, if we remove cafeteria-style certain key components of a conditional discharge, it becomes a skeleton of itself and no longer appears in federal court as it does in state court. For example, as it relates to suspended sentences, this court in the United States v. Wood declined to incorporate Oklahoma suspension provision because at the time, the guidelines did not allow that type of discretion. But even after United States v. Booker that made the guidelines advisatory, there are still multiple examples of statutory authority that are inconsistent with a suspended sentence. For example, revocation of parole in U.S. 3565 contemplates probation may be modified if there's a violation or revoked and then you proceed back to Subchapter A for sentencing options. 18 U.S.C. 3582C, imposition of a sentence, the court may not modify a term of imprisonment once it has been imposed except that and none of those options are list anything directly as a conditional discharge or even remotely similar. 18 U.S.C. 3621, imprisonment of a convicted person, says a person shall be a person who has been sentenced to a term of imprisonment pursuant to the sub provisions of Subchapter D of Chapter 227 shall be committed to the Bureau of Prisons. These statutes are inconsistent with the cornerstone of a conditional discharge that involves suspended sentences. Under New Mexico statutes annotated 31-2013, when a person has not been previously convicted of a felony offense is found guilty for which a deferred or suspended sentence is authorized, the court may withhold adjudication of guilt and enter a discharge of conditional discharge order in place on probation. It clearly contemplates that a suspended sentence both is an eligibility requirement but then functions as a key component. As I outlined in the government's brief on page 13, the full range of paths the New Mexico court could pursue withholding adjudication of guilt, probation, revocation, parole, a suspended sentence, a partially suspended sentence, conflict with federal policy. If Mr. Martinez was sentenced in state court, the court would have sentenced him to three years suspended that in favor of probation and entered a conditional discharge. Had he then violated, the court could have revoked his conditional discharge retroactively found him guilty, sentenced him to probation, parole, imprisonment, and or any combination of partially suspended sentences to move forward. Even if the court doesn't revoke the conditional discharge in state court, Mr. Martinez could have been sent to jail or prison and unless the court revokes that conditional discharge with the magic words as state versus Harris that is cited in my brief stands for he remains not a felon. And so there are several key components of a conditional discharge that as part of a systematic scheme just doesn't work in federal court. Instead, the district court in this case properly derived Mr. Martinez sentencing parameters as indicated in US versus Jones, US versus Chapman, following Garcia and Wood, his maximum and minimum terms of imprisonment. In this case, 0-3 years is his probation and fines because those air available navigable at the federal level. I think Mr. Martinez is reliant on Bocer and Silva is misplaced in part because Bocer was decided pre 1990 amendment. But in either case, that issue was just one of punishment that the government in this case doesn't dispute that placing Mr. Martinez on probation through a conditional discharge if available would be punishment. But the key issue here before this court is whether the sentencing scheme is available if it still conflicts with federal law. And this court has continuously held that if a sentencing scheme conflicts with federal law, we don't adopt it from different than the deferred acceptance situation under Bocer, where the court enters a plea but doesn't hold on to it almost in advance. Under Silva in Washington, there's a diversionary program that appears to be more traditional, where you sign away all your rights, you enter admission, then you enter into the program. And if you violate, everything is on file and simply entered. In New Mexico, you plead guilty or are convicted by jury. You're perceived to sentencing, you are sensed. And then later, the court can enter in adjudication of guilt if if you violate, and that's totally discretionary. I would also like to add that this court could affirm the district court's decision as it relates to conditional discharge in two respects. The first and primary way that the government argues is that it's not an available sentencing scheme in federal court. If this court is not prepared to go that far, the district court also made sufficient findings that under the defendant's unique sentencing factors of 3553, this case just wasn't appropriate, given what Mr. Martinez did. So she declined to even if she could have the option, the district court judge said it wasn't appropriate in this case, acting with her in her discretion. Mr. Martinez is your argument that even if she aired, it was harmless. Yes, Your Honor. Mr. Martinez does not challenge at any level in the briefing or even today this sound conclusion. And so he's waived any attack to challenge that discretion that the district court operated within. Unless there are any questions from this court, I'll yield my remaining time. Thank you, Counsel. Ms. Frazier, would you give 90 seconds to Mr Elsenheimer? Thank you, Your Honor. Very briefly, if I can address a couple of points with which I disagree with the government's position with regard to the conditional discharge. First of all, the government arguments that a conditional discharge differs in some way from the procedure under 3607. I disagree with that because it seeing it is, I believe, in all aspects in analogous provision in federal court, a order of probation is imposed and prior to judgment with a conditional discharge in in federal court, as Mr Cohen pointed out, there's a plea of guilty or finding of guilt. But at the point of sentencing, um, and I use quotes there, a conditional discharges order is entered. It's not a judgment. It's a conditional discharge order placing the individual on probation for a certain period of time. Um, very similar to the situation in 3607. Secondly, government points. Excuse me. Of what significance is it that the court said? Even if it could do that, this was not a case forward to do it. Thank you, Your Honor. To address that question, that's the harmless air question. Mr Cohen pointed out. I'm not trying to argue and we haven't raised that we would have a different result if we were to return to the court and argue for a conditional discharge. I think the judge would do what she did before our argument. And the point that I would like to make is that I think that it's procedurally necessary to begin at the right place. So in observing that it didn't seem as though a conditional discharge is available to the district court, the district court started at the wrong place. That's our argument with regard to the procedural reasonableness of her observing that she didn't think that she could impose a condition. So I'm sorry. I'm sorry. Um, I thought I heard something. Um, the last point I want to make with regard to the government's argument, they say that Mr Cohen says there are two features of a conditional discharge that don't mesh with federal sentencing. I disagree with that because with a conditional discharge, someone is placed on probation, which is identical to supervised release. And we have all of the functions in the sentencing scheme in federal court that are that perfectly accommodated conditional discharge. And I see I'm out of time. Thank you, Your Honors. Thank you, Counsel. You are excused and the case will be good.